NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

JOY EVANS,

     Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

Civil Action No. 13-4689

**OPINION**

**BUMB**, United States District Judge:

Plaintiff Joy D. Evans (the "Plaintiff") seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for supplemental security income (SSI). For the reasons that follow, this Court remands the Commissioner's final decision.

## I.  Standard of Review

A reviewing court must uphold the Commissioner of Social Security's factual findings if they are supported by "substantial evidence," even if the court would have decided the inquiry differently. 42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence" means

1

"'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Where the evidence is susceptible to "more than one rational interpretation, the Commissioner's conclusion must be upheld." Ahern v. Comm'r of Soc. Sec., 165 F. App'x 212, 215 (3d Cir. 2006) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

If faced with conflicting evidence, however, the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). Stated differently,

> [Unless] the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotations omitted); see also Guerrero v. Comm'r of Soc. Sec., No. 05-1709, 2006 WL 1722356, *3 (D.N.J.

June 19, 2006) ("The [administrative law judge's] responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it."), aff'd, 249 F. App'x 289 (3d Cir. 2007).

While the Commissioner's decision need not discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 122 (3d Cir. 2000); see also Fargnoli, 247 F.3d at 42 ("Although we do not expect the [administrative law judge] to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

In addition to the "substantial evidence" inquiry, the reviewing court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

## "Disability" Defined

3

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

4

In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," [he] is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity[1] to perform [his] past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to [his] past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume [his] former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether [he] is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

---

[1] "Residual functional capacity" is the most the claimant can still do despite the limitations caused by his impairments. 20 C.F.R. § 404.1545(a)(1).

## II.   Procedural Background

On December 22, 2009, Plaintiff filed an application for
SSI, alleging a disability onset date of January 1, 2005.
(Administrative Record "R." 153-56.) The claim was denied on
June 2, 2010 and again upon reconsideration on October 21, 2010.
(Id. at 84-88, 92-93.) Plaintiff requested a Hearing before an
Administrative Law Judge ("ALJ") on December 11, 2010. (Id. at
94-6.) The Honorable Jonathan L. Wesner held hearings on
November 30, 2011 and June 20, 2012, at which Plaintiff appeared
and was represented by counsel. (Id. at 30-67, 69-81.) The ALJ
issued his decision on October 4, 2012, finding that Plaintiff
was not disabled and denying SSI. (Id. at 13-25.) Plaintiff
requested review of the ALJ's decision, which was denied on July
2, 2013. (Id. at 1-6.) Thus, the ALJ's decision became the final
decision of the Commissioner. See 20 C.F.R. § 404.981.

## III.   Factual Background

Plaintiff is a 45 year-old female who completed high school
and lives alone. (R. 37-38, 43-44.) She has been diagnosed with
bipolar disorder and depression. (See, e.g., id. at 258-59.) In
addition, in early 2010, Plaintiff was diagnosed with a meniscal
tear in her right knee that requires arthroscopic surgery. (Id.
at 295.) Since the alleged onset date of her disability in
January 2005, Plaintiff has held several jobs for brief periods
but never for longer than a few weeks due to her anxiety,

6

depression, and inability to deal with people. (Id. at 44-45.)
She also has a long history of substance abuse. (Id. at 254-55.)

### a. The ALJ's Decision

Applying the requisite five-step analysis described above, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity ("SGA") since December 10, 2009, the application date. (R. 18.) At Step Two, the ALJ found that Plaintiff suffers the following severe impairments: bipolar disorder, polysubstance abuse, and a torn meniscus in her right knee. (Id.) At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or is medically equivalent to a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.) In doing so, the ALJ considered the following medical evidence:

- The December 31, 2011 opinion of Dr. Richard Cohen, an independent medical examiner (Ex. 16F);
- A March 23, 2010 consultative orthopedic examination conducted by Dr. Nithyashuba Khona (Ex. 4F);
- A March 3, 2010 evaluation conducted by Dr. William Coffey, an independent psychologist (Ex. 3F);
- Psychiatric records of Dr. Satishkumar Patel with Burlington Human Services (Ex. 17F); and
- A clinical summary completed by Dr. Margaret Wolfman (Ex. 17F).

The ALJ then considered Plaintiff's residual functional capacity ("RFC"), relying on the following medical evidence:

- Records and opinions of Plaintiff's treating physician since January 2008, Dr. Manesh Patel (Exs. 2F, 9F, 13F);

- Records of Plaintiff's visits to Lourdes Medical Center Emergency Department (Ex. 14F);

- Records of Dr. Mark Reiner, orthopedic consultant (R. at 297-98);

- Opinion of Dr. Brandi Rappaport, a treating physician (id. at 22, 374-78); and

- Opinions of Dr. Robert Walsh, Dr. Eden Atienza, Dr. Michael D'Adamo, and Dr. Joan Joynson, State agency medical consultants (Exs. 5F, 7F, 10F, 12F).

He determined that Plaintiff has the RFC to perform the full range of sedentary work as defined in 20 C.F.R. 416.967(a), except that Plaintiff is limited to simple, routine, and unskilled work to account for her bipolar disorder. (R. 20, 22.) In crafting Plaintiff's RFC, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms to be not credible. (Id. at 21.) At Step Four, the ALJ determined that Plaintiff had no past relevant work. (Id. at 24.) The ALJ also determined that Plaintiff was 41 years old when her application was filed, which is defined as a "younger" individual under 20 C.F.R. § 416.963(c), has a high school education, and can communicate in English. (Id.) Finally, at Step Five, the ALJ determined that there are significant numbers of jobs in the national economy that Plaintiff can perform given her age, work experience, and RFC. (Id. at 25.) Accordingly, the ALJ concluded that Plaintiff has not been under

a disability since December 10, 2009, the date her application was filed.[2]

## IV.  Legal Analysis

On appeal, Plaintiff argues that the ALJ failed to: (1) appropriately weigh the opinion of Plaintiff's treating physician, Dr. Manesh Patel ("Dr. M. Patel"); (2) provide a proper RFC statement that accounts for all of Plaintiff's severe and non-severe impairments and limitations pursuant to SSR 96-8p; (3) properly adhere to SSRs 96-7p and 13-2p when considering Plaintiff's subjective complaints concerning the nature and extent of her limitations; and (4) properly evaluate the vocational evidence of record pursuant to SSRs 00-4p, 83-12, and 83-14. The Court addresses each argument in turn.

### a. The Opinion of Plaintiff's Treating Physician[3]

Plaintiff first argues that the ALJ did not give appropriate weight to the testimony of her treating physician, Dr. M. Patel, with respect to the Doctor's assessment of her mental and physical capabilities. Specifically, Dr. M. Patel

---

[2] SSI is payable beginning in the month following the month in which the application is filed; it is not payable for the month in which the application is filed or any prior months. See 20 C.F.R. § 416.335.

[3] This Court construes Plaintiff's arguments regarding the ALJ's determinations with respect to her treating physician as a challenge to the ALJ's RFC finding at Step Four. See Johnson v. Comm'r, 529 F.3d 198, 201 (3d Cir. 2008).

opined on January 26, 2009, that Plaintiff had been diagnosed
with bipolar disorder and depression and was unable to work (R.
330). He listed no physical limitations, and noted his belief
that Plaintiff was not a likely candidate for SSI (id.). He
further opined that Plaintiff's incapacity would last
approximately six months (id.). Dr. M. Patel submitted a second
opinion dated January 15, 2010, in which he opined that
Plaintiff could stand or walk for less than two hours a day, sit
for less than six hours, and had limited ability to push or pull
items. (Id. at 249.) While he listed a diagnosis of bipolar
disorder and lumbar strain, he provided no further explanations
or laboratory studies supporting his conclusions. He did note,
however, that Plaintiff responded well to psychiatric
medication. (Id. at 248.) Dr. M. Patel submitted a third opinion
dated October 28, 2010, in which he concluded that Plaintiff was
unable to sit, stand, or walk, and could occasionally lift up to
ten pounds (id. at 305). He explained that Plaintiff complained
of right knee pain due to a meniscal tear, with secondary
complaints of right hand pain and lumbar strain. He further
noted that Plaintiff's knee requires surgery "which may
moderately to significantly reduce pain and perhaps improve
functional status." (Id. at 307.) According to Dr. M. Patel,
Plaintiff was unable to grasp, push, or pull with her right hand
but could engage in fine manipulation. (Id. at 305.) As to

10

Plaintiff's mental impairments, Dr. M. Patel opined that she was
"seriously limited, but not precluded" in her abilities to
understand, remember, and carry out very short and simple
instructions (id. at 308), and was "seriously limited, but not
precluded" in her abilities to maintain regular attendance and
be punctual within customary, usually strict tolerances (id. at
308). He explained that Plaintiff's bipolar disorder and chronic
pain would "reduce attention span and [increase] distractions."
(Id. at 309.) The ALJ noted Dr. M. Patel's opinions, but
afforded them "little weight" as he found them inconsistent with
the objective medical evidence of record. (Id. at 23.)

The Social Security Administration regulations regarding
the evaluation of evidence from treating physicians advises that
the opinion of a treating physician receives controlling weight
if it is "well-supported by medically acceptable clinical and
laboratory diagnostic techniques and is not inconsistent with
the other substantial evidence in [the] case record." 20 C.F.R.
§ 404.1527(c)(2). However, the ALJ is not bound to accept the
opinion of a treating physician without weighing it against the
other medical evidence of record. Kent v. Schweiker, 710 F.2d
110, 115 n.5 (3d Cir. 1983). The existence of contradictory
medical evidence allows an ALJ to reject a treating physician's
testimony. See Jones v. Sullivan, 954 F.2d 125, 128-29 (3d Cir.
1991). In rejecting a treating physician's testimony, the ALJ

must explain his reasoning on the record. See Allen v. Bowen, 881 F.2d 37, 41 (3d Cir. 1989). An ALJ's own medical analysis that is contrary to medical evidence, especially from treating physicians, is invalid. Allen, 881 F. 2d at 41; see also Gatling v. Sullivan, No. 91-5072 (CSF), 1992 WL 209537, at *4 (D.N.J. Aug. 13, 1992) (noting ALJ must not substitute his own opinion for those of experts in matters requiring expert skill, knowledge, or experience). Moreover, an ALJ may not make speculative inferences from medical reports. Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981). The ALJ must indicate the basis for conclusions that a claimant's testimony or doctor's report is not credible. Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).

Plaintiff first argues that the ALJ substituted his own lay opinion for that of Plaintiff's treating physician when he stated during the administrative hearing that his personal experience with a torn meniscus caused him to doubt the doctor's evaluation of Plaintiff's right knee pain. (Pl.'s Br. at 11.) The ALJ's statements regarding his own experience are disconcerting.  Although it appears that  the ALJ conducted an extensive review of the relevant medical evidence and cited the contradictory medical evidence supporting his rejection of Dr. M. Patel's opinion, it is difficult for this Court to ascertain to what extent, if any, the ALJ's own personal experience

12

influenced his findings. This is especially so where the ALJ questioned his own impartiality and suggested that he should recuse himself. (R. 72.) Because the Court finds that remand is necessary on the grounds discussed _infra_, the Court believes that this matter should be assigned to another ALJ upon remand. While another ALJ may very well reach the same conclusions upon review of the medical evidence, those conclusions will not be subject to question on grounds of personal bias or influence.[4]

---

[4] In the absence of concerns regarding the ALJ's impartiality, it appears that the ALJ appropriately gave little weight to the restrictive opinions of Dr. M. Patel with respect to Plaintiff's orthopedic assessment, as those opinions appear to be inconsistent with other medical evidence in the record, including Dr. M. Patel's treatment notes. (R. 23.) For example, on October 28, 2010, Dr. M. Patel noted that Plaintiff could not do any sitting, standing or walking. (_Id._ at 305.) However, he reported on June 1, 2010 that Plaintiff "had to walk daughter in school parade." (_Id._ at 317.) A few months prior, on February 23, 2010, the doctor described Plaintiff's knee pain as only "mild[ly] tender." (R. 321.) Plaintiff herself reported that she walks to the store, prepares light meals for herself, and sometimes does the cleaning, laundry, and shopping. (_Id._ at 22, 39–40.) In addition, she attends church and bible study. (_Id._ at 216–17.) Such activities are irreconcilable with a restriction completely limiting her ability to sit, stand, or walk.

Furthermore, Dr. M. Patel's assessment of Plaintiff's orthopedic limitations appears to be inconsistent with other opinions contained in the record. For example, Dr. Khona conducted an orthopedic evaluation on March 24, 2010 and observed that Plaintiff had normal gait and station, and needed no help changing, getting on or off the examination table, or rising from a chair. (R. 258.) She further noted that Plaintiff had full flexion, extension, and lateral flexion bilaterally with full range of motion in upper and lower extremities. Her grip strength was recorded as 5/5, and Dr. Khona observed that Plaintiff's "[h]and and finger dexterity were physiological and equal bilaterally." (_Id._) She concluded that Plaintiff could sit, stand, and walk, and had no physical limitations. (_Id._ at

As for the ALJ's conclusions regarding the functional limitations associated with Plaintiff's mental impairments, the Court cannot rule out the possibility that the ALJ's decision to afford little weight to these opinions was similarly influenced by the ALJ's disbelief of the doctor's other conclusions. That is not to say that the ALJ's decision is not supported by substantial evidence; indeed, the ALJ assigned upon remand may reach the same conclusions. According to Dr. M. Patel's August 4, 2008 notes, Plaintiff's bipolar disorder and depression were stable on medication and Plaintiff reported no anxiety or panic attacks. (R. 332.) On January 26, 2009, Dr. M. Patel's notes show that Plaintiff was sleeping better; her appetite had

---

259.) On September 16, 2010, Virel Prajapatti, P.A., examined Plaintiff and noted no swelling or tenderness in the extremities, intact motor and sensory functions, and negative straight leg raising. (Id. at 396.) Moreover, doctors at Drenk Behavioral Health in 2011 noted Plaintiff's "gait was within normal limit," her "general medical condition was reported to be good," and she "denied significant medical problems." (Id. at 464.)

While Plaintiff argues that Dr. Reiner's evaluation supports Dr. M. Patel's findings of orthopedic impairment, Dr. Reiner's letter states only that Plaintiff's MRI shows a torn meniscus that must be corrected with arthroscopic surgery. (R. 298.) The ALJ's opinion acknowledges Plaintiff's knee pain is the result of her torn meniscus and that her impairment is expected to result in pain. (See id. at 22.) Yet, the record does not suggest that Plaintiff's torn meniscus would necessarily result in the extent or severity of the limitations provided by Dr. M. Patel's opinion, i.e., that Plaintiff is completely unable to sit, stand, or walk. And, it is this part of Dr. M. Patel's opinion that the ALJ found was contradicted by the medical evidence of record.

improved; she was more relaxed and had no panic attacks or
anxiety. Moreover, her bipolar depression and insomnia were
reported as "stable." (Id. at 331.) Inexplicably, on that same
day, Dr. M. Patel completed disability forms attesting that
Plaintiff was unable to work. (Id. at 330.) On January 15, 2010,
Dr. M. Patel reported that claimant was on and off her
psychotropic medications and intermittently sought follow-up
treatment for psychiatric symptoms. (Id. at 248.) He further
noted that she responded well to medication but would also
benefit from psychiatric treatment. (Id.) On September 21, 2010,
Dr. M. Patel again noted that Plaintiff's anxiety had improved.
(Id. at 312.)

　　　Dr. M. Patel's opinion regarding Plaintiff's mental
limitations is also disputed by evidence and observations of
other doctors in the record. For example, Dr. Wolfman and her
staff examined Plaintiff, on July 7, 2011, and found that
Plaintiff was fully oriented, had normal speech and no evidence
of hallucinations or delusions. (Id. at 464.) Although Plaintiff
self-reported difficulties with concentrating and focusing, Dr.
Wolfman observed that Plaintiff's "thought process was logical
and she exhibited and reported no looseness of association or
flight of ideas." Moreover, Dr. Wolfman concluded that her
insight and judgment were good. (Id.) In addition, Dr. Coffey
found Plaintiff to be oriented in three spheres with intact

attention and adequate judgment. (Id. at 254.) He also stated she engaged in normal conversation with no evidence of thought disorder. (Id.)

Plaintiff cites May 2011 treatment notes from Drenk Behavioral Health that purportedly support Dr. M. Patel's assessment of the limitations associated with Plaintiff's mental impairments. Drenk diagnosed Plaintiff with mood disorder, noted her depression, and assigned her a GAF score of 50.[5] (Id. at 460, 462.) Despite the GAF score, Plaintiff exhibited appropriate affect, cooperative attitude, organized thought content with normal thought perception, was oriented in all three areas, had intact insight and appropriate impulse control, and did not express suicidal or homicidal ideation.[6] (Id. at 460-62.) It was recommended that Plaintiff engage in outpatient treatment consisting of counseling and medication. (Id.) Plaintiff visited Drenk again in February 2012, complaining of mood swings and depression. (Id. at 454.) At that time, she had not been taking her medications for a "few months." (Id.) This fact is consistent with the ALJ's opinion that when Plaintiff is

---

[5] GAF refers to a Global Assessment of Functioning score, and as set forth in the ALJ's opinion, a GAF of 41-50 reflects serious symptoms. (R. 21 n.1.)

[6] The records do reflect that Plaintiff has expressed suicidal thoughts at some time in the past. (R. 455.)

compliant with her prescribed treatment medications, her mental health substantially improves. (Id. at 21.)

In addition, Plaintiff points to several prior time periods in which other doctors found Plaintiff to be disabled as supporting Dr. M. Patel's opinion. Specifically, Dr. M. Patel opined that Plaintiff was unable to work full-time from February to May 2008 (id. at 366-69) and from January to July 2009[7] (id. at 329-30). Dr. Heeyul Cho Lee opined that Plaintiff was able to work full-time but then wrote that she would be incapacitated from October 2007 to April 2008 (id. at 372). Dr. Brandi Rappaport similarly opined that Plaintiff was able to work full-time but then provided a period of incapacity lasting from July to October 2007 (id. at 375-77). However, none of these opinions set forth any functional limitations and those from Dr. Lee and Dr. Rappaport are not inconsistent with the ALJ's conclusions in that they do not state that Plaintiff is unable to work full-time.[8]

---

[7] Interestingly, he also opined at this time that she was not a likely candidate for SSI.

[8] The Court also notes that even if these opinions did provide that Plaintiff was "unable to work" or was "disabled," the ALJ would be entitled to disregard or accord them little weight for that reason alone. See 20 C.F.R. § 416.927(3) ("Opinions on some issues, such as the examples that follow, are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability. . . . A statement by a medical source

Thus, as the above discussion indicates, an ALJ – free of any question surrounding outside influences - may well find, upon remand, that Dr. M. Patel's opinions are contradicted by the medical evidence of record and not entitled to controlling weight.

### b. Evaluation of Plaintiff's RFC

Plaintiff next claims that the ALJ erred when fashioning her RFC by failing to account for Plaintiff's non-severe impairments of manic depression, anxiety, chronic insomnia or lumbar pain.[9] In addition, Plaintiff contends that while the ALJ gave "great weight" to Dr. Cohen's opinion, he failed to include a limitation regarding Plaintiff's ability to interact or relate with others. SSR 96-8p requires an ALJ to consider a plaintiff's limitations and restrictions that are attributable to medically determinable impairments, whether severe or not. SSR 96-8p. In combination with other limitations, limitations due to non-

---

that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Indeed, the ALJ acknowledged this fact during the administrative hearing. (R. 76-77.)

[9] Plaintiff also argues that the medical evidence demonstrates that Plaintiff's depressive order should have been deemed a severe impairment and thus the ALJ erred at Step Two. However, because the ALJ found in Plaintiff's favor at Step Two, "even if he erroneously concluded that some of her other impairments were non-severe, any error was harmless." Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005)).

severe impairments may prevent an individual from performing past relevant work or may narrow the range of work that individual is able to do. Id. The ALJ found that Plaintiff has the RFC to perform the full range of sedentary work as defined in 20 CFR § 416.967(a), except that Plaintiff is limited to simple, routine unskilled work to account for Plaintiff's bipolar disorder. (R. 22.) "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967.

Contrary to Plaintiff's assertion, the record reflects that the ALJ considered Plaintiff's subjective complaints of depression and anxiety, as well as the related medical records. (R. 20-22 ("[Plaintiff] stated that her depression began when her son passed away. She indicated that she has problems around other people, gets overwhelmed easily, and gets panic attacks.").) Plaintiff contends, however, that the ALJ failed to consider the combined effect of Plaintiff's bipolar disorder and manic depression, citing a January 15, 2010 report by Dr. M. Patel. That report notes Plaintiff's history of bipolar disorder

19

and depression, and Plaintiff's inability to concentrate or
focus on work duties.[10] (R. 248.) However, the ALJ considered
this opinion, along with the other medical evidence related to
Plaintiff's mental health symptoms, and the functional
limitations supported by that medical evidence. (See, e.g., id.
at 20-24.) He concluded that Plaintiff's bipolar disorder
limited her to simple, routine and unskilled work. In doing so,
the ALJ noted that Dr. M. Patel's records showed her mental
health status, and consequently, associated mental health
symptoms, substantially improve when Plaintiff complies with her
prescribed treatments. (See, e.g., id. at 248 (noting
Plaintiff's "good response" to medication), 331.) As noted by
the ALJ, Dr. M. Patel's treatment reports contained several
notations of Plaintiff's improvement in anxiety levels and lack
of panic attacks. (See, e.g., id. at 21, 312, 331; cf. 323, 453
(not taking medications).) In addition, as discussed above,
numerous examining doctors reported that Plaintiff presented
alert, oriented, with normal affect, and organized thought
processes. (Id. at 254, 453.) Notably, Plaintiff identifies no
additional limitations caused by her depression that are not
addressed by the ALJ's inclusion of a limitation to simple,

---

[10] Notably, Dr. M. Patel only diagnosed Plaintiff with
bipolar disorder. (R. 248.)

routine and unskilled work.[11] See Capoferri v. Harris, 501 F.
Supp. 32, 36 (E.D. Pa. 1980), aff'd 649 F.2d 858 (3d Cir. 1981)
(noting it is not enough to merely establish the presence of a
disease or impairment, but rather, the disease or impairment
must cause functional limitations that preclude the performance
of any substantial gainful activity). Accordingly, the Court
finds that the ALJ adequately accounted for the functional
limitations associated with Plaintiff's depression and anxiety.

As to Plaintiff's right hand pain and lumbar strain, only
Dr. M. Patel's opinion suggests physical limitations associated
with those impairments. This opinion, as well as the ALJ's
treatment of it is discussed at length above. To reiterate,
however, while the medical evidence reflects intermittent and
more recent complaints of back pain and right hand pain that
limit Plaintiff's abilities to sit and push, pull, or grasp with
her right hand, the medical evidence also demonstrates that
Plaintiff has 5/5 muscle strength in all extremities and has no

---

[11] Plaintiff also argues that Dr. Khona "noted that the two
impairments [depression and bipolar disorder] considered
together may cause severe limitations." (Pl.'s Br. at 17.) This
grossly misstates Dr. Khona's findings. Dr. Khona conducted an
orthopedic evaluation – not a psychiatric evaluation, but while
recording Plaintiff's self-reported medical history, she noted a
history of bipolar disorder and manic depression. (See R. 259.)
While Dr. Khona concluded that Plaintiff had no physical
limitations, she noted that Plaintiff "may have severe
limitations due to her mental illness" and "would benefit from a
psych eval." (Id.)

21

other physical limitations.[12] Moreover, she reported only mild tenderness in her back. (Id. at 396.) As such, the ALJ's decision not to include additional limitations related to Plaintiff's lumbar strain and hand pain are supported by the record.

With respect to Plaintiff's insomnia, the medical evidence contains numerous citations to Plaintiff's chronic insomnia (R. 291, 310, 312, 313, 329-30), but the ALJ failed to address this impairment or to assess whether this impairment, alone or in combination with others, limits Plaintiff's functional abilities. While Dr. M. Patel noted that Plaintiff was at least temporarily unable to work due to a combination of impairments that included Plaintiff's insomnia (id. at 329-30), later records show that he was treating Plaintiff's insomnia with medication. (R. 310.) It is unclear from the record, and the ALJ does not discuss, whether her insomnia is controlled through such treatment or whether this impairment impacts Plaintiff's functional abilities. Upon remand, an ALJ should adequately address this impairment and determine whether the evidence supports any related limitations upon remand.

In addition, the Court agrees with Plaintiff that while the ALJ found Plaintiff was moderately limited in social functioning

---

[12] Dr. Khona also noted that Plaintiff is able to fully extend her hands and make a fist. (R. 260.)

and had problems getting along with others, neither the RFC nor the ALJ's opinion seem to address the need for any workplace limitations related to these difficulties and for this reason the Court must remand this matter for further consideration.[13] The Commissioner suggests that the ALJ's restriction to unskilled work accounts for any limitations related to Plaintiff's difficulties with people, citing SSR 85-15. SSR 85-15 acknowledges that "These [unskilled] jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis." The Commissioner also relies upon the vocational expert, who testified that a moderate limitation would not preclude the performance of unskilled work. (R. 62-63.) It may be that the ALJ intended to rely upon these reasons in crafting the RFC, but his failure to explicitly state them precludes this Court from properly evaluating his decision. See Ogden, 677 F. Supp. at 278; Gober, 574 F.2d at 776. Moreover, the Court does not find the vocational expert's testimony to be

---

[13] Because the Court finds remand is necessary, it need not address Plaintiff's additional arguments.

so clearly stated.[14] Not only is it difficult to ascertain what precisely is being discussed between the ALJ and the expert, but it appears that the expert may be relying upon certain

---

[14] It appears that the Commissioner is referring to the following line of questioning:

ALJ: Okay. I'll – there's an RFC in Cohen's [phonetic] interrogatory but it's expressed in terms of the PRTF more so than the RFC. I'll read it. He uses the imprecise terms that we're precluded from using. Mild, moderate, and so forth. And I guess I neglected to address a GIF score. It's not an appropriate way of expressing functionality. But the level of the score again can be of some guidance in determining the degree of limitation if it gets weight, understand. And the score 50 is in that band – 50 or below, 41 to 50 – is in that band that actually says serious limitation, which I already asked you about serious limitation.

ATTY: You did.

ALJ: And we agree that if that is given weight the propensity is not there more likely than not that the person would be able to sustain or not.

ATTY: Correct.

ALJ: And then the next level up, which he called moderate, which actually isn't even defined at all, if it's that degree of limitation that gets weight are you going to say that SGA's not possible of performance?

VE: No. Because it would be acceptable in unskilled occupations.

ALJ: There, in that level, it would be a greater likelihood that it wouldn't rise to the level of occasional.

VE: Correct.

(R. 62-63.)

assumptions regarding the meaning of the terminology utilized by Dr. Cohen and thus, the accuracy of his conclusions regarding the impact on available jobs is questionable. Accordingly, the Court finds that the more prudent course is to remand this matter for further consideration by the ALJ.

**V.    Conclusion**

For these reasons, the Court will remand this matter for further consideration of the record consistent with this Opinion. In addition, the Court will order that another ALJ be assigned to this matter.


Date: <u>September 19, 2014</u>

                        <u>s/Renée Marie Bumb</u>
                        RENÉE MARIE BUMB
                        UNITED STATES DISTRICT JUDGE